# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| **THOMAS W. PLEASANT, M. JUSTIN HOLOMAN, MALLORY E. HADDON, ROBERT KINSMAN, COURTENAY BYRD, GAIL BYRD, EVANS BYRD, individually, and on behalf of all others similarly situated,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**EQUIFAX, INC.,**<br><br>*Defendant*. | **CIVIL ACTION FILE**<br><br>**NO. _____**<br><br><br>**Complaint—Class Action** |

---

## COMPLAINT

**COME NOW PLAINTIFFS**, THOMAS W. PLEASANT, M. JUSTIN HOLOMAN, MALLORY E. HADDON, ROBERT KINSMAN, COURTENAY BYRD, GAIL BYRD and EVANS BYRD (collectively, "Plaintiffs"), by and through their counsel of record, and bring this class action against Defendant Equifax, Inc. ("Equifax" or "Defendant"), as a result of the massive data breach suffered by as many as 143 million Equifax customers, many of whom reside in

North Carolina, on behalf of themselves and all others similarly situated seeking damages, restitution, and injunctive relief for the Class, as defined below, from Defendant.

## NATURE OF CLAIM

1.      This is a consumer class action lawsuit brought against Defendant Equifax for its failure to safeguard and secure the personally identifiable information ("Personally Identifiable Information" or "PII"), including names, dates of birth, social security numbers, addresses and driver's license numbers, and other highly confidential credit and financial information, such as credit card numbers for hundreds of thousands of consumers.

2.      Equifax is a major consumer credit reporting agency, who gathers and maintains sensitive information on over 800 million consumers and more than 88 million businesses worldwide.

3.      On Thursday, September 7, 2017, Defendant announced to the public this massive loss of information. Equifax admitted in this announcement that the hackers had exploited a flaw in its website allowing them to gain access to account information for up to 143 million customers ("Equifax Data Breach"). These hackers acquired some of the most valuable damaging information ever attained. For example, these hackers can use the consumer's social security numbers to impersonate a consumer in electronic transactions where the social security number

is used to verify the consumer's identification.  In a New York Times article dated September 7, 2007 tilted "*Equifax Says Cyberattack May Have Affected 143 Million in the U.S.*," Avaian Litan, a fraud analyst at Gartner is quoted as stating: "On a scale of 1 to 10 in terms of risk to consumers, this is a 10." In an Associated Press article dated September 11, 2017 titled: "*What You Need To Know About The Equifax Data Breach,*" John Ulzheimer, an independent credit consultant who previously worked at Equifax, described the accessed information to be "the crown jewels of personal information."

4.     Equifax claims to have discovered the unauthorized access on July 29, 2017 and asserts that the intrusion lasted from mid-May through July 2017.

5.     To make matters worse, instead of providing immediate credit monitoring without trampling on the injured consumers' legal rights, Equifax has taken steps to force injured consumers into arbitration and deny the consumers their right to join together in a class action context, in an effort to make litigation too cumbersome and expensive for the consumers.  Specifically, Equifax has offered injured consumers credit monitoring services (that would have been unnecessary except for Equifax's failures).  Equifax Chairman and CEO Richard F. Smith said in a statement that the company was taking an "unprecedented step" in offering credit file monitoring and identity theft protection free of charge to every U.S. consumer.  However, this unprecedented step contained a trap.  In the fine print of

this "assistance," Equifax attempts to have the consumer waive their right to trial by jury and the ability to collectively sue in a class action context. After receiving fierce criticism, Equifax has appeared to equivocate on this bullying tactic, indicating that the arbitration on its website "will not apply to this cybersecurity incident."

## PARTIES

6.      Plaintiff Thomas W. Pleasant is a citizen and resident of New Hanover County, North Carolina.  He is a victim of the Equifax Data Breach.

7.      Plaintiff M. Justin Holoman is a citizen and resident of New Hanover County, North Carolina.  He is a victim of the Equifax Data Breach

8.      Plaintiff Mallory E. Haddon is a citizen and resident of New Hanover County, North Carolina.  She is a victim of the Equifax Data Breach.

9.      Plaintiff Robert Kinsman is a citizen and resident of New Hanover County, North Carolina.  He is a victim of the Equifax Data Breach.

10.     Plaintiff Courtenay Byrd is a citizen and resident of New Hanover County, North Carolina.  She is a victim of the Equifax Data Breach.

11.     Plaintiff Gail Byrd is a citizen and resident of New Hanover County, North Carolina.  She is a victim of the Equifax Data Breach.

12.     Plaintiff Evans Byrd is a citizen and resident of New Hanover County, North Carolina.  He is a victim of the Equifax Data Breach.

13.   Defendant Equifax, Inc. is a Delaware Corporation North with its principal place of business located in Atlanta, Georgia.

## JURISDICTION AND VENUE

14.   This Court has subject jurisdiction over this action, pursuant to 28 U.S.C. §1332(a) (1) and (d)(2).  In the aggregate, Plaintiffs' claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs. The parties are citizens of different states.

15.   This Court has personal jurisdiction over Equifax because Equifax maintains its principal place of business in the Northern District of Georgia, regularly conducts business in Georgia, and has sufficient minimum contacts in Georgia. Equifax intentionally availed itself of this jurisdiction by marketing and selling products and services and by accepting and processing payments for those products and services within Georgia.

16.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Equifax 's principal place of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## GENERAL ALLEGATIONS

17.   Equifax provides credit information to a variety of business, governmental agencies, and other customers.  In order to track and rate a consumers' credit, it collects financial data from banks, retailers, credit card companies and the

like. This information includes loan histories, payment histories, credit card usage, credit limits, missed rent and utilities payments, and employer history. All this information, and more, factors into credit scores.

18.    Personal data like that which was accessed by third-parties in the Equifax Data Breach will likely result in a variety of criminal endeavors, all harming the victims. Plaintiffs have suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by their PII being placed in the hands of criminals who have already, or will imminently, misuse such information.

19.    Equifax knew, or reasonably should have known, that the PII it collected and stored is highly sensitive, susceptible to attack, and could be used for wrongful purposes by third parties, such as identity theft and fraud.

20.    Equifax failed to reasonably secure Plaintiffs and the Class members' PII and, instead had an insufficient and inadequate system to protect this information.

21.    Equifax knew, or reasonably should have known, of the foreseeable consequences that would occur if its data security system was breached, including, specifically, the significant costs that would be imposed on individuals as a result of a breach.

22.     Identity thieves who obtain the PII as happened in the Equifax breach, often will, among other things:

      a.    Remove funds from financial accounts;

      b.    Place unauthorized charges on existing credit cards;

      c.    Open new accounts;

      d.    Obtain medical treatment on health insurance; and

      e.    Commit various types of government fraud such as:

          i.    immigration fraud;

          ii.    obtaining a driver's license or identification card in the victim's name but with another's picture;

          iii.    using the victim's information to obtain government benefits; or

          iv.    filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

23.     Victims of data breaches and identity theft victims are required to spend hours and funds attempting to repair the impact to their credit, accounts and more. As such, if a consumer receives reimbursement for a financial loss due to fraud, the consumer still suffers from other unreimbursed damages.  Each of the Plaintiffs have begun this process.

24.    As a direct and proximate result of Equifax's wrongful actions and inaction and the resulting Data Breach, Plaintiffs and Class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to deal with the actual and potential impact of the Equifax Data Breach. Plaintiffs and Class members are now required to diligently monitor their financial and personal records and will have to do so for years in the future, by, among other things: placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports. As such Plaintiffs and the Class members are and will continue to incur damages in addition to any fraudulent use of their PII.

25.    The Equifax Data Breach was a directly and proximately caused by Equifax's failure to properly safeguard and protect Plaintiffs' and Class members' PII from unauthorized access.  Equifax's failed to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class members' PII and to protect against reasonably foreseeable threats to such data.

26.    Equifax's obligations arise, among other ways, from state and federal regulations, industry practices, and the common law.

27.     Equifax had the means and resources to prevent the Equifax Breach, but neglected to adequately establish and implement the same and/or failed to invest in data security, despite the growing number of well-publicized data breaches.

28.     Had Equifax established and implemented reasonable measures and remedied data security system deficiencies, the Equifax Data Breach would have been averted and Plaintiffs' and the Class members' PII would not have been stolen.

29.     Equifax's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation.

30.     Equifax continues to hold Plaintiffs' and Class members' PII. Plaintiffs and members of the Class have an interest in insuring that their PII is secure, remains secure, is properly and promptly destroyed and is not subject to further theft.

31.     As a direct and proximate result of Equifax's failure to implement or maintain adequate data security measures for PII and the resulting the Equifax Data Breach, the PII of the Plaintiffs and Class members has been exposed to criminals for misuse. The injuries suffered by Plaintiffs and Class members as a direct result of the Equifax Data Breach include without limitation:

     a.     Unauthorized use of their PII;

     b.     Theft of their personal and financial information;

c.     Costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

d.     Damages arising from the inability to use their PII;

e.     Loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including decreased credit scores and adverse credit notations;

f.     Costs associated with time spent to address and attempt to ameliorate, mitigate and deal with the actual and future consequences of the Equifax Data Breach, including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, and the stress, nuisance and annoyance of dealing with all issues resulting from the Equifax Data Breach;

g.     The imminent and certainly impending injury flowing from potential fraud and identify theft posed by their PII being placed in the hands of criminals and already misused via the sale of

> Plaintiff's and Class members' information on the Internet black market;

h.   Damages to and diminution in value of their PII; and

i.   The loss of Plaintiff's and Class members' privacy.

## CLASS ACTION ALLEGATIONS

32.   Plaintiffs bring this action on their behalf, and on behalf of all other persons similarly situated ("the Class").  The Class that Plaintiffs seeks to represent is:

> All persons who reside in North Carolina and had PII collected and stored by Equifax and whose personal and/or financial information was obtained without authorization by third-parties as a result of the data breach announced by Equifax on September 7, 2017.

> Excluded from the Class are Defendant; officers, directors, and employees of Defendant; any entity in which Defendant have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of the Defendant, and all judges to whom the case is assigned, and the members of their respective staff.

33.   The members of the Class are so numerous that the joinder of all members is impractical.  While the exact number of Class members is unknown to Plaintiffs at this time, based on information and belief, it is well in excess of one hundred thousand.

34.   There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Plaintiffs' claims are typical of the members of the Class, and Plaintiffs can fairly and adequately

represent the interests of the Class.

35.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because it involves questions of law and fact common to the member of the Class that predominate over any questions affecting only individual members, including, but not limited to:

a.      Whether Defendant unlawfully used, maintained, lost, or disclosed Class members' PII;

b.      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach;

c.      Whether Equifax unreasonably delayed in notifying affected customers of the data breach;

d.      Whether Defendant's conduct was negligent;

e.      Whether Plaintiffs and Class members' suffered damages because of Equifax's negligence and improper actions, errors and omissions.

f.      Whether Equifax's conduct constitutes deceptive trade practices under applicable law;

g.      Whether Plaintiffs and Class members' suffered damages because of Equifax's deceptive trade practices.

        h.      Whether Plaintiffs and the Class are entitled to recover these damages and/or injunctive relief.

36.    Plaintiffs' claims are typical of those of other Class members because Plaintiffs' PII, like that of every other Class member, were misused and/or disclosed by Defendant.

37.    Plaintiffs will fairly and accurately represent the interests of the Class.

38.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant and would lead to repetitive adjudication of common questions of law and fact.    Accordingly, class treatment is superior to any other method for adjudicating the controversy.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action under Fed. R. Civ. P. 23(b)(3).

39.    Damages for any individual Class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

40.     Defendant have acted or refused to act on grounds that apply generally to the Class, as alleged above, and certification is proper under Fed. R. Civ. P. 23(b)(2).

41.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c). Defendant, through its uniform conduct, has acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

42.     Pursuant to Fed. R. Civ. P. 23(c)(4), certain common issues are appropriate for certification because the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

      a.     Whether Equifax owed a legal duty of due care to Plaintiffs and the Class members in collecting, storing, and safeguarding their PII;

      b.     Whether Equifax failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach;

      c.     Whether Defendant's conduct was negligent;

      d.     Whether the Equifax Data Breach could have reasonably been averted had Equifax  implemented and maintained reasonable

security procedures and practices; and

e.     Whether Equifax unreasonably delayed in notifying affected customers of the data breach;

43.     All proposed Class members are readily ascertainable from Equifax's records, which, upon information and belief, include the nature of the Breach, when the same occurred and a list of all potentially affected individuals and their contact information.   This and other reasonably accessible information is adequate to identify the Class members and issue notice to the Class.

## COUNT I
### (Negligence)

44.     Plaintiffs repeat and reallege the allegations set forth in this Complaint as if fully set forth herein.

45.     Upon collecting, accepting and storing Plaintiffs' and Class members' PII in database systems, Defendant undertook and owed an affirmative duty to Plaintiffs and Class members to exercise reasonable care to protect their credit and PII from unauthorized access by third-parties.   It was Defendant's obligation to secure and safeguard that information and to utilize commercially reasonable methods to do so. Defendant was obligated to implement processes to quickly detect a data breach and to timely act on the same and on warnings about a data breach. Defendant knew that the PII was private and confidential and should be protected as private and confidential. Defendant knew that a release of Plaintiffs' stored

information would cause serious risk of theft and criminal misuse. Defendant knew that an improper release of this PII would cause the victims years of time and expense to deal with the same.

46.     Defendant breached their duties to Plaintiffs and Class members to adequately protect and safeguard this information by knowingly disregarding standard principles relating to the securing PII. Defendant negligently failed to provide adequate supervision and oversight of the PII in spite of the known risks and foreseeable likelihood of breach and misuse. Defendant's failures permitted third persons to gather Plaintiffs' and Class members' PII, misuse the PII, and intentionally disclose it to others without consent.

47.     The law also imposes an affirmative duty on Defendant to timely disclose the theft of the PII so that Plaintiffs and Class members could be vigilant in attempting to determine if any of their accounts or assets had been stolen through identity theft.

48.     Defendant breached their duties to notify Class members of the unauthorized access by waiting from July 29th to September 7th to provide such notice.

49.     Through Defendant's acts and omissions described in this Complaint, Defendant unlawfully breached their duty to use reasonable care to adequately

protect and secure Plaintiffs' and Class members' PII during the time it was within Defendant's possession or control.

50.     Further, through its failure to provide timely and clear notification of the data breach to consumers, Defendant negligently prevented Plaintiffs and Class members from taking meaningful, proactive steps to investigate possible identity theft.

51.     Defendant improperly and inadequately safeguarded the PII of Plaintiffs and Class members in deviation from standard industry rules, regulations, and practices at the time of the unauthorized access.

52.     Given the extensive publicity about the efforts of criminal enterprises to obtain PII, including the data breach of Experian's data, it was foreseeable to Defendant that the Plaintiffs' and Class members' PII in their possession was valuable and attractive to misappropriation and misuse.

53.     In fact, Plaintiffs' PII has been misused as set forth above.  Plaintiffs have been damaged by reason of this theft and have incurred and will continue to incur damages related to the Equifax Data Breach.

54.     For all the reasons stated above, Defendant's conduct was negligent and departed from reasonable standards of care including, but not limited to: failing to adequately protect the PII; failing to secure its data storage systems, despite knowing their vulnerabilities, failure to comply with industry standard security practices,

failing to implement adequate system and event monitoring, failing to implement the systems, policies, and procedures necessary to prevent this type of data breach and failing to provide Plaintiffs and Class members with timely and sufficient notice that their sensitive PII had been compromised.

55.    Neither Plaintiffs nor the other Class members contributed to the data breach or subsequent misuse of their PII as described in this Complaint.

56.    As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and every member of the Class suffered damages including, but not limited to: damages arising from the unauthorized charges on their accounts, debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class members; damages arising from Plaintiffs' inability to use their debit or credit cards or other accounts because those cards were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach. The nature of other forms of economic damage and injury will be more fully developed after a thorough investigation of the facts and events surrounding the theft mentioned above.

## COUNT II
### (Violation of the Fair Credit Reporting Act)

57.     Plaintiffs repeat and reallege the allegations set forth in this Complaint as if fully set forth herein.

58.     Plaintiffs and Class members are consumers entitled to the protections of the FCRA. 15 U.S.C. § 1681a(c).

59.     Equifax is a "consumer reporting agency" under the FCRA. 15 U.S.C. § 1681a(f).

60.     The FCRA requires consumer reporting agencies, including Equifax, to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a).

61.     The PII that was accesses in the Equifax Data Breach was a "consumer report" under the FCRA. 15 U.S.C. § 1681a(d)(1).

62.     The FCRA allows consumer reporting agencies, including Equifax to furnish consumer report under the limited circumstances set forth in 15 U.S.C. § 1681b, "and no other." 15 U.S.C. § 1681b(a).

63.     By reason of the facts, circumstances, errors and omissions, detailed herein and the resulting Equifax Data Breach, Equifax violated 15 U.S.C. § 1681b.

64.     This violation was performed in a willful and reckless manner. The willful and reckless nature of Equifax's violations is supported by, among other things, former employees' admissions that Equifax's data security practices have

deteriorated in recent years, Equifax's previous data breaches in the past, Equifax's failure to implement data breach precautions that it knew were taken by others,

65.     As a direct and proximate result of Equifax's willful or reckless of the FCRA, Plaintiffs and the Class members are entitled to recover any actual damages sustained by the consumer, or damages of not less than $100 and not more than $1,000, along with punitive damages, costs of the action, and reasonable attorneys' fees.

## COUNT III
**(Unfair and Deceptive Trade Practices: N.C. GEN. STAT. § 75-1, *et seq.*)**

66.     Plaintiffs repeat and reallege the allegations set forth in this Complaint as if fully set forth herein.

67.     The North Carolina Unfair and Deceptive Trade Practices Act (hereinafter "UDTPA") is expressly intended to protect "consumers" like Plaintiffs and Class members from unfair or deceptive trade practices.

68.     Plaintiffs and Class members have a vested interest in the privacy, security, and integrity of their PII; therefore, this interest is a "thing of value" as contemplated by the UDTPA.

69.     Defendant is a "person" within the meaning of the UDTPA and, at all pertinent times, were subject to the requirements and proscriptions of the UDTPA with respect to all of their business and trade practices described herein.

70.     Plaintiffs and Class members are "consumers" and are "likely to be damaged" by Defendant's ongoing deceptive trade practices.

71.     Defendant engaged in unfair and deceptive trade practices:

    a.     When it gathered, accepted and stored consumers' PII and failed to adequately safeguard them;

    b.     By failing to properly implement adequate, commercially reasonable security measures to protect consumers' sensitive PII.

    c.     By failing to disclose that they do not enlist industry standard security practices, which renders Defendant's credit information services particularly vulnerable to data breaches;

    d.     Continuing to acquire and store PII when it knew or should have known of its systems inadequacies and vulnerabilities and eventually the Equifax Data Breach; and

    e.     Failure to timely disclose the Equifax Data Breach.

72.     Defendant's conduct is unethical, unscrupulous, and substantially injurious to Plaintiffs and the Class.

73.     Further, Defendant violated the UDTPA by violating North Carolina's Identity Theft Protection Act (ITPA), N.C.G.S. § 75-60, *et. seq*. (ITPA).

74.     Defendant violated ITPA by reason of the actions, errors and omissions set forth above and generally:

> a.   Failing to prevent the PII of consumers from falling into unauthorized hands; and
>
> b.   Failing to provide adequate notice of the security breach to affected consumers upon discovery that their system had been compromised and PII had been stolen.

75.   Plaintiffs and Class members have suffered ascertainable losses as a direct result of Defendant's unconscionable acts or practices and unfair or deceptive acts or practices and are receive a trebled amount of the same. Plaintiffs and the Class are also entitled to an award of attorneys' fees, costs, and other recoverable expenses of litigation.

76.   Under the UDPTA, Plaintiffs and the Class are entitled to preliminary and permanent injunctive relief without proof of monetary damages, loss of profits, or intent to deceive.  Plaintiffs and the Class seek equitable relief and seek to enjoin Defendant on terms that the Court considers appropriate.

77.   Defendant's conduct caused and continues to cause substantial injury to Plaintiffs and Class members.  Unless preliminary and permanent injunctive relief is granted, Plaintiffs and the Class will suffer harm; Plaintiffs and the Class members do not have an adequate remedy at law; and the balance of the equities weighs in favor of Plaintiffs and the Class.

78.     Plaintiffs accordingly request that the Court enter an injunction requiring Defendant to implement and maintain reasonable security procedures, including, but not limited to, ordering that:

a.      Defendant, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

b.      Defendant engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring;

c.      Defendant audit, test, and train their security personnel regarding any new or modified procedures;

d.      Defendant, consistent with industry standard practices, segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendant is compromised, hackers cannot gain access to other portions of Defendant's systems;

e.   Defendant purge, delete, and destroy in a reasonable secure manner customer data not necessary for its provisions of services;

f.   Defendant, consistent with industry standard practices, conduct regular database scanning and security checks;

g.   Defendant, consistent with industry standard practices, evaluate web applications for vulnerabilities to prevent web application threats to consumers;

h.   Defendant, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

i.   Defendant meaningfully educate their customers about the threats the customers face as a result of the loss of their PII to third parties, as well as the steps Defendant's customers must take to protect themselves.

## ALTERNATIVE COUNT V
### (Georgia Fair Business Practices Act: O.C.G.A. § 10-1-390, *et seq.*)

79.   In the alternative, should the Court determine Georgia's statute applies to the facts and circumstances alleged herein, then Plaintiffs allege a violation of Georgia's Fair Business Practices Act as follows:

80.     Plaintiffs repeat and reallege the allegations set forth in this Complaint as if fully set forth herein.

81.     In the alternative, should the Court determine Georgia's statute applies to the facts and circumstances alleged herein, then Plaintiffs allege a violation of Georgia's Fair Business Practices Act ("GFBPA"),

82.     Equifax is engaged in, and their acts and omissions affect, trade and commerce pursuant to O.C.G.A. § 10-1-392(28).

83.     As alleged herein this Complaint, Equifax engaged in unfair or deceptive acts or practices in the conduct of consumer transactions, including the following, in violation of the GFBPA:

a.     When it gathered, accepted and stored consumers' PII and failed to adequately safeguard them;

b.     By failing to properly implement adequate, commercially reasonable security measures to protect consumers' sensitive PII;

c.     By failing to disclose that they do not enlist industry standard security practices, which renders Defendant's credit information services particularly vulnerable to data breaches;

d.     By continuing to acquire and store PII when it knew or should have known of its systems inadequacies and vulnerabilities and eventually the Equifax Data Breach; and

e.     By failing to timely disclose the Equifax Security Data Breach.

84.     As a direct and proximate result of Equifax's violation of the GFBPA, Plaintiffs and Class members have suffered ascertainable losses and are entitled to recover the same as damages.

85.     Also as a direct result of Equifax's knowing violation of the GFBPA, Plaintiffs and Class members are entitled to preliminary and permanent injunctive relief.  Plaintiffs and the Class seek equitable relief and seek to enjoin Defendant on terms that the Court considers appropriate.

86.     Defendant's conduct caused and continues to cause substantial injury to Plaintiffs and Class members.  Unless preliminary and permanent injunctive relief is granted, Plaintiffs and the Class will suffer harm; Plaintiffs and the Class members do not have an adequate remedy at law; and the balance of the equities weighs in favor of Plaintiffs and the Class.

87.     Plaintiffs accordingly requests that the Court enter an injunction requiring Defendant to implement and maintain reasonable security procedures, including, but not limited to, ordering that:

a.     Defendant, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated

attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

b.    Defendant engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring;

c.    Defendant audit, test, and train their security personnel regarding any new or modified procedures;

d.    Defendant, consistent with industry standard practices, segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendant is compromised, hackers cannot gain access to other portions of Defendant's systems;

e.    Defendant purge, delete, and destroy in a reasonable secure manner customer data not necessary for its provisions of services;

f.    Defendant, consistent with industry standard practices, conduct regular database scanning and security checks;

g.    Defendant, consistent with industry standard practices, evaluate web applications for vulnerabilities to prevent web application threats to consumers;

h.   Defendant, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

i.   Defendant meaningfully educate their customers about the threats the customers face as a result of the loss of their PII to third parties, as well as the steps Defendant's customers must take to protect themselves.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all Class members proposed in this Complaint, pray for judgment as follows:

A.   For an Order certifying this action as a class action and appointing Plaintiffs and their Counsel to represent the Class;

B.   For equitable relief set forth above;

C.   For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined;

E.   That Plaintiffs' damages be trebled pursuant to N.C. Gen. Stat. §75-16.;

F.   For an award of costs of suit and attorneys' fees, and interest, as allowable by law, including N.C. Gen. Stat. §75-16. 1; and

G.   Such other and further relief as this Court may deem just and proper.

[**COMPLAINT**—Page 28 of Twenty-Nine]

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of their claims to the extent authorized by law.

Respectfully submitted this 13th day of September, 2017.

**LAW OFFICE OF**
**GEORGE E. BUTLER II, LLC**

**LAW OFFICE OF**
**RHINE LAW FIRM, P.C.**

 s/ George E. Butler II
George E. Butler II
GA Bar No. 099575
NC Bar No. 7037
Attorney for Plaintiffs
132 Hawkins Street
Dahlonega, GA 30533
Tel: (706) 864-3200
Fax: (706) 864-3206
Email:  geb@lawyers.com

Joel R. Rhine*
NC Bar No. 16028
Attorney for Plaintiffs
1612 Military Cutoff Road
Suite 300
Wilmington, NC 28403
Tel: (910) 772-9960
Fax: (910) 772-9062
Email:  jrr@rhinelawfirm.com

## COUNSEL FOR PLAINTIFFS AND THE PROPOSED CLASS

*Pro Hac Vice Pending*